FARMERS STATE BANK OF RICHARDTON, a Corporation, Appellant, v. GEORGE J. BROWN, as Sheriff of Stark County, North Dakota, and R. S. Brookings, Respondents.

(204 N. W. 673.)

**Corporations — chattel mortgages — corporate seal not essential to validity of corporation's chattel mortgage; president held to have had authority to execute mortgage.**

  1. It is not essential to the validity of a chattel mortgage, purporting to have been executed by a corporation, that the corporate seal should be attached, and, where the evidence shows that a mortgage was executed on behalf

---

Note.—(1) Necessity of seal on corporate chattel mortgage, see 7 R. C. L. 542.
  (2) On right of corporation to prefer creditors, see annotation in 19 A.L.R. 320; 38 A.L.R. 90; 7 R. C. L. 755; 2 R. C. L. Supp. 442; 4 R. C. L. Supp. 496.

of the corporation, by its president, as security for a pre-existing debt evidenced by notes given and renewed from time to time in the name of the corporation, by the president, and where the president was, apparently, in sole charge of the affairs of the corporation, it is *held* that the mortgage was executed by an officer having authority.

**Corporations — chattel mortgage to creditor by insolvent corporation, to secure existing indebtedness, is valid, although constituting preference.**

2. A corporation, though insolvent or in failing circumstances, may give a mortgage to a creditor to secure its existing indebtedness and such mortgage will be valid though it constitute a preference. (Comp. Laws, 1913, § 7218).

**Corporations — validity of chattel mortgage held not affected by fact that it was not executed in office of corporation.**

3. The validity of a mortgage given by an officer of a corporation, possessing authority, is not affected by the fact that the mortgage was not executed in the office of the corporation, where it appears that the sheriff had previously placed a lock on the door of the office in attempting to levy upon the corporate property therein contained to satisfy a personal judgment against the president of the corporation.

**Corporations — when nonexistence of corporation on given date is essential to claim of priority of one party, such party has burden of proving such fact.**

4. Where it appears that two parties, each claiming prior right to resort to corporate property for the satisfaction of their respective indebtednesses, had dealt with their common debtor during the same period of time as a corporation and where it is essential to the claim of priority of one party to establish the non-existence of the corporation upon a given date within that period, such party sustains the burden of proving that fact.

**Corporations — ex-parte certificate of secretary of state that corporate charter is canceled and not reinstated held not competent evidence.**

5. An ex parte certificate of the Secretary of State, to the effect that a corporate charter is canceled on the record of his office for failure to file an annual report and not re-instated, is not competent evidence of the facts therein stated.

**Corporations — questions as to termination of corporate existence not decided.**

6. Whether cancellation of the corporate charter by the Secretary of State for failure to file an annual report and pay fees, under § 4518 of the Compiled Laws of 1913, and the failure of the corporation to be re-instated, under § 4521 of the Compiled Laws of 1913, as amended by chapter 99 of the Laws of 1917 and chapter 4 of the Laws of the Special Session of 1918, has the effect of terminating the corporate existence without a judicial proceeding, and whether third parties dealing with a corporation, after such defaults, are pre-

cluded from asserting the non-existence of the corporation, are questions which are mooted but are not decided.

(On Petition for Rehearing.)

**Corporations — legality of existence and powers cannot be questioned collaterally.**

7. The legality of the existence of a corporation and its right to exercise corporate powers can not be questioned collaterally.

**Corporations — failure to pay annual fee held not ipso facto to work forfeiture of corporate charter.**

8. Section 4518, Compiled Laws of 1913, which provides for the filing of an annual report by corporations, the payment of a filing fee and makes it the duty of the Secretary of State to enter upon the records of his office the cancellation of the charter for non-compliance, is construed, and it is *held* that thereunder the failure to pay the annual fee does not, ipso facto, work a forfeiture of the corporate charter.

Opinion filed March 30, 1925.   Rehearing denied June 14, 1925.

Corporations, 14 C. J. § 166 p. 163 n. 69 New; § 177 p. 174 n. 82 New; § 231 p. 223 n. 77, p. 225 n. 87, 89; 14a C. J. § 1858 p. 94 n. 97; § 2766 p. 721 n. 37, 46 New; § 2770 p. 723 n. 82; § 3074 p. 895 n. 50; § 3716 p. 1111 n. 63 New.   Evidence, 22 C. J. § 922 p. 810 n. 1.

Appeal from the District Court of Stark County, *Berry,* J. Reversed.

*Murtha & Sturgeon,* for appellant.

Certified copies of official records are essentially secondary in character, and the right to introduce such written copies as primary evidence exists only by virtue of statute, and, to authorize their admission, they must be certified in the manner required by the statute.

The best evidence of the existence or nonexistence of entries in public records is the records themselves.   Sykes v. Beck, 12 N. D. 242.

A certificate of a public officer is only evidence when made so by law.   Authenticated copies of judicial and other public records are admissible as evidence, but certificates as to their general legal effect, or as to what they show or prove, are not.   Billingsley v. Hiles, 61 N. W. 687.

The record is proof of the contents of the document, and of its due execution. 22 C. J. 933, § 1144; Murray v. Foskett, 130 N. W. 14.

In the absence of statute, the corporate seal is not necessary and it need not be affixed to contracts of the corporation. 14 C. J. 334, notes 45 and 47.

In an action on a note purporting to have been made by defendant corporation, where it appears that all the business of defendant, including the making of numerous similar notes, had for a long time been transacted by its president and secretary, who executed the note, and that their actions had always been informally ratified by paying the notes, and otherwise defendant is estopped to deny the authority of such officers to execute the note. Grand Co. St. Bank v. N. W. Land Co. 28 N. D. 479.

In North Dakota the distinction between scaled and unsealed instruments is abolished. § 5894. Under § 7218, debtor may prefer one creditor to another, and this applies to insolvent corporations, where they act in the absence of fraud. Wannemacher v. Merrill, 22 N. D. 46; John Miller Co. v. Harvey Merc. Co. 38 N. D. 531.

Where the president who was also the general manager of the corporation was authorized under its by-laws to transact its general business, his power to execute a note and mortgage and the legality of his acts will not be questioned, especially where he acts in good faith, and there is no fraud. 14 C. J. 223.

*S. E. Ellsworth,* for respondents.

Authorities agree in holding that when the execution by a corporation of a note or other instrument of that character is denied, the burden of showing the authority by which it is executed is on the plaintiff. Walsenburg Water Co. v. Moore (Colo.) 38 Pac. 60.

Where in a suit against a corporation on a note purporting to be that of the corporation, by its president, and incorporated in the complaint, defendant denies . . . that president had authority to sign, the note is not admissible in evidence until the authority is shown. Marshall Field Co. v. Owen Ruff Corn Co. (Iowa) 90 N. W. 618; Sears v. Daly (Or.) 73 Pac. 5.

A deed without the corporate seal, purporting to have been executed on behalf of a corporation by its Board of Trustees is inadmissible as evidence without first showing their authority to execute the same.

The recital of such authority in the deed is not evidence of its existence. Gashwiler v. Willis, 33 Cal. 1.

If the corporate seal was attached the presumption is that the person executing the deed as president had authority to do so in behalf of the corporation. Dodge v. Mortgage Co. 34 S. E. 422.

There can be no question as to the power of the legislature to prescribe the manner in which corporations shall contract, and when it has done so, the mode prescribed must be strictly pursued, or the contract will be invalid. Rockwell v. Elkhorn Bank, 13 Wis. 653.

A chattel mortgage of all of a company's property, executed under authority given at a special meeting at which half of the directors were present, and others not having been notified of the meeting, is unauthorized and void. Broughton v. Jones, 79 N. W. 691.

The legislature possesses the undoubted power to provide that a corporation may lose its corporate existence without the intervention of courts by an omission of duty or violation of its charter or default as to imposed limitations, and whether the legislature intended so to provide depends upon the language used in the statute. Ford v. Kansas City etc. R. Co. 52 Mo. App. 439.

A dissolution by the Secretary of State of a corporation for nonpayment of license fees must be deemed effective until in some appropriate proceeding it is decreed otherwise. Soferberg v. McRae, 126 Pac. 538.

It is then civilly dead and is neither a de jure or de facto corporation and has no power except to wind up its affairs. Houston v. Utah Lake Land Co. 187 Pac. 174.

Repeal of charter under reservation to do so disables the corporation from continuing its corporate business. People v. O'Brien, 18 N. E. 692.

Forfeiture of a charter by Secretary of State for nonpayment of franchise takes all authority away from the corporation to act. Bunn v. Laredo, 213 S. W. 320.

An insolvent corporation holds its assets as a trust fund for the benefit of its creditors, and a transfer of its property to one person with an understanding that certain creditors shall be preferred, is fraudulent, without reference to and knowledge of the preferred

creditors of the character of the transfer and the condition of the corporation. Furber v. Williams Flower Co. 111 N. W. 548.

BIRDZELL, J. This is an appeal from a judgment in favor of the defendant in a claim and delivery action. A trial was had in the district court of Stark County and at the conclusion of the trial, the questions at issue being resolved by counsel into questions of law, the case was withdrawn from the jury and, after being taken under advisement, was decided by the court. The essential facts are as follows: In 1910 there was organized a corporation known as E. Mottershead Company. About the time of its organization the corporation opened an office for the transaction of its business in Richardton. From this time forward its business affairs were principally, if not entirely, under the management of one Edmund Mottershead who was president of the company. In the course of time the company became indebted to the Farmers State Bank, the plaintiff in this action, in the sum of about $1200.00 and to one R. S. Brookings in the sum of $10,714.92. In addition to this, Mottershead became indebted to Brookings personally in a much larger amount. In October, 1922 suits were commenced by Brookings against the E. Mottershead Company and Mottershead personally, and the following March judgments were entered in favor of Brookings against E. Mottershead Company for $10,714.92 and against Mottershead personally for $47,709.96. An execution was immediately taken out under the judgment against Mottershead personally, but there is no return in the record showing what was done thereunder. There is evidence, however, indicating that a levy was made upon some property belonging to the judgment debtor and upon the property of the corporation involved in this controversy. In May, following the entry of these judgments, another execution was taken out in an attempt to satisfy the judgment against the E. Mottershead Company, and this execution was levied upon the property involved in this controversy. On April 2nd, a month prior to the issuance of the latter execution, the E. Mottershead Company, by E. Mottershead, president, gave to the plaintiff in this action a chattel mortgage on the property in question, consisting, in general, of the office furniture, fixtures and supplies of the company, to secure a demand note previously given in renewal of a former indebtedness of

the company. The plaintiff's claim in this case is based upon the interest acquired under this mortgage and the claim of the defendant is under the execution of May 2nd. The trial court sustained the claim of the defendant and the plaintiff appeals.

The principal contentions upon the appeal concern the validity of the mortgage. It is assailed as not having been properly executed by the corporation (1) because the corporate seal was not attached; (2) because there was no proof that the person signing the mortgage on behalf of the company was an officer authorized to execute mortgage of its property; (3) because the corporation was insolvent and the mortgage was not given in the ordinary course of business; and (4) because, prior to the giving of the mortgage, the corporation had failed to file with the Secretary of State the annual report required by § 4518 of the Compiled Laws of 1913 and had suffered a cancellation of its charter and that it had not been restored under § 4521 of the Compiled Laws of 1913, as amended by chapter 99 of the Laws of 1917 and chapter 4 of the Laws of the Special Session of 1918.

We do not understand it to be contended by counsel that the chattel mortgage is altogether invalid by reason of the fact that the corporate seal was not attached, but, rather, that the absence of the seal deprives the mortgage of a prima facie presumption in favor of the authority of the officer executing it to act on behalf of the corporation. No statute is called to our attention which requires the corporate seal to be attached to a chattel mortgage executed on behalf of a corporation, and in the absence of such a requirement the mortgage would be valid if executed by any officer of a corporation with authority in fact or with ostensible authority.

The evidence in this case shows that E. Mottershead had charge of the office of the E. Mottershead Company; that the office was located in the same building as the plaintiff bank and upon the same floor; that, according to the undisputed evidence of the cashier of the plaintiff bank, E. Mottershead was the only person in the office who had anything to say about it; that Marian Mottershead, the president's wife, held some office in the corporation (the witness did not know what office it was) and that the E. Mottershead Company had been indebted to the plaintiff bank for some time, for which indebtedness various notes had been executed in its name by E. Mottershead, president.

We are of the opinion that this evidence sufficiently establishes the prima facie authority of Mottershead to execute a chattel mortgage upon the property of the corporation to secure its indebtedness. There being sufficient proof, in our opinion, that the mortgage was given by one with authority to execute it, we think there is no merit in the contention that it was not good as to the defendant because not given in the ordinary course of business. The corporation could give a mortgage to secure its existing indebtedness, even though insolvent or in failing condition at the time. This, at most, would make the mortgage operate as a preference, and in this state it is recognized that a corporation or an individual may prefer one creditor over another. Comp. Laws 1913, § 7218. John Miller Co. v. Harvey Mercantile Co. 38 N. D. 531, 165 N. W. 558. The fact that the mortgage was executed in the plaintiff bank in no manner affects the regularity of the transaction, especially in view of the fact that the sheriff, in an attempt to make effective a levy on the corporate property under an execution against Mottershead individually, had placed a padlock on the door of the office where the corporation did business—thus barring Mottershead from the office.

This brings us to the contention that the mortgage is ineffective by reason of the failure of the corporation to file with the Secretary of State the annual report required by § 4518 of the Compiled Laws of 1913 and its failure to take steps to secure re-instatement under § 4521 of the Compiled Laws of 1913, as amended by chapter 99 of the Laws of 1917 and chapter 4 of the Laws of the Special Session of 1918. Before taking up this contention, it is important to note the state of the record as to proof of the facts upon which the contention is based. Obviously, the question of the effect of the alleged default of the corporation is not involved unless the default itself be established by competent evidence. The only evidence of default offered at the trial was a purported certificate of the Secretary of State as follows:

"To All To Whom These Presents Shall Come, I, Thomas Hall, Secretary of State of the State of North Dakota certify that

"Charter of E. Mottershead Co., of Richardton, was canceled on the records of this office October 25, 1921, for failure to file annual re-

port for the year 1921. That said charter has not been re-instated on the records of this office.

"In Testimony Whereof," etc.

The record shows this exhibit was offered as a part of the foundation for the objection to the introduction, at the instance of the plaintiff, of the original certificate of incorporation of E. Mottershead Company.

It is to be observed that, during the period covered by the transactions in question, all the parties concerned here treated the corporation as in existence. Indeed, the claim of the defendants to the property in question is based upon an execution issued upon a judgment in favor of Brookings against the corporation. This judgment had been obtained in March. No steps had ever been taken to substitute the directors as trustees and, the levy being made upon the property in question as the property of the corporation, the defendants are clearly in no position to question the existence of the corporation originally. The existence of the corporation on the crucial day of April 2nd, the date of the execution of the chattel mortgage, is only drawn in question by the denial in the answer "that said E. Mottershead Company referred to in the amended complaint had, on April 2, 1923, any legal existence or authority to do business within the State of North Dakota." Taking the view most favorable to the defendants, and assuming that they may raise the question of the corporation's existence on April 2nd, we are of the opinion that the defense is an affirmative one and that they sustain the burden of going forward with evidence to establish it.

The defendants' offer is as follows:

"Mr. Ellsworth: In connection with the offer of the certificate, Plaintiff's Exhibit No. 1, the defendant now offers a further certificate of Thomas Hall, Secretary of State of North Dakota, under the great seal of the State of North Dakota, to the effect that the charter of the E. Mottershead Company, Plaintiff's Exhibit No. 1, is canceled on the records of the office of the Secretary of State, for failure to file its report, its annual report, for the year of 1921, and that the said charter has not been re-instated on the records of their office."

To this there was an objection that it was not the best evidence; that there was no foundation laid; that the statute does not authorize

certification of this fact by the Secretary of State or by his deputy; and that the certificate does not purport to be a copy of any record, to which might have been added the objection that it was hearsay. We are clearly of the opinion that the certificate was inadmissible for all of the foregoing assigned reasons. Cross v. Pinckneyville Mill Co. 17 Ill. 54; Billingsley v. Hiles, 6 S. D. 445, 61 N. W. 687. An ex parte certificate or statement by a public officer is not evidence of the facts stated, unless made so by statute.

In the Illinois case, supra, where it was sought to use the certificate of the Secretary of State as evidence that a duplicate certificate o' corporate organization had not been filed in his office, it was said in the opinion:

"I am not aware of any statute or rule of law that makes such certificate evidence of anything. The certificate of the Secretary will be sufficient to authenticate the laws of the United States, of other States (Rev. Stat. p. 233, § 6), and 'all laws, acts, resolutions (of our own State), or other records, appertaining to his said office,' id. p. 491, § 5. But I deem it a misapprehension of the true object of such a certificate, when offered to prove what is not of record, or that this certificate is not of record."

The certificate offered and received below is not competent evidence of the facts sought to be established.

But the respondent contends that, as the plaintiff sought to prove the existence of the corporation by offering the original certificate of the Secretary of State, made when the corporation was organized, it was proper for the court to admit the certificate of cancellation as a part of the cross examination had for the purpose of laying a foundation for an objection to the original certificate. The argument, as we understand it, is, substantially, that one certificate of the Secretary of State is just as admissible as the other. It is difficult to see how any facts voluntarily certified to by a public officer ten years after the issuance of a certificate required by law to be made (Comp. Laws 1913, § 4512), can have any bearing in determining the admissibility of the earlier certificate. We are at a loss to understand how it could constitute any foundation for an objection. Without passing upon the question as to whether or not the original certificate was admissible for the purpose of establishing corporate existence, we are

satisfied that the subsequent certificate was not properly admitted as a part of the cross examination in laying a foundation for an objection.

In our view of the case it is unnecessary to consider whether or not the certificate was likewise inadmissible for an additional reason, also assigned, namely: that cancellation of the articles of incorporation in the office of the Secretary of State would not affect the right of the corporation to continue to do business until the Attorney General, through action brought, had secured a cancellation of its charter in a judicial proceeding. Nor need we consider the kindred question of the right of the defendants to question the corporate existence. On these questions see: People ex rel. Sabichi v. Los Angeles Electric R. Co. 91 Cal. 338, 27 Pac. 673; Duggan v. Colorado Mortg. & Invest. Co. 11 Colo. 113, 17 Pac. 105; State ex rel. Long v. Brownstown & R. Valley Gravel Road Co. 120 Ind. 337, 22 N. E. 316; Chesapeake & O. Canal Co. v. Baltimore & O. R. Co. 4 Gill & J. 1, 76, 86, 87; Briggs v. Cape Cod Ship Canal Co. 137 Mass. 71; State v. Fourth N. H. Turnp. Road, 15 N. H. 162, 41 Am. Dec. 690; People v. Manhattan Co. 9 Wend. 351, 383; New York & L. I. Bridge Co. v. Smith, 148 N. Y. 540, 42 N. E. 1088; State ex rel. Spartanburg v. Spartanburg, C. & G. R. Co. 51 S. C. 129, 28 S. E. 145; Houston v. Houston Belt & M. P. R. Co. 84 Tex. 581, 19 S. W. 786: Greenbrier Lumber Co. v. Ward, 30 W. Va. 43, 3 S. E. 227; Atty. Gen. v. Superior & St. C. R. Co. 93 Wis. 604, 67 N. W. 1138; 2 Morawetz, Priv. Corp. 2d ed. §§ 1006–1015; note in 8 Am. St. Rep. page 193.

The mortgage in question appears to be valid and prior to the defendants' levy. It follows that the judgment must be reversed and that judgment should be entered for the plaintiff. It is so ordered.

CHRISTIANSON, Ch. J., and BURKE, JOHNSON, and NUESSLE, JJ., concur.

On petition for rehearing.

BIRDZELL, J. The respondents have filed a petition for rehearing in which it is asserted that while Brookings admits that the corpor-

ation was existing in the year 1917 when his dealings were had with it, the defendants question the existence of the corporation at the time when the mortgage to the plaintiff was executed. Thus, it is apparent that the claim of both the plaintiff and the defendants to the property in question is from the same source; namely, the corporation. But the contention is made that it was nevertheless incumbent upon the plaintiff to prove the existence of the corporation at the time the mortgage was executed. The original existence of the corporation not being disputed, we think the burden of proving the non-existence of the corporation upon any subsequent date was properly placed, in the original opinion, upon the party alleging it.

The further contention is advanced that the holding in the opinion to the effect that an insolvent corporation may prefer creditors is against the weight of precedent and authority. This question was directly involved in the case of John Miller Co. v. Harvey Mercantile Co. 38 N. D. 531, 165 N. W. 558, cited in the original opinion herein, and decided contrary to the contentions of the respondents. We adhere to that decision.

It was also contended that in any event the cause should be remanded for a new trial instead of being remanded for judgment. This contention is based upon the procedural proposition that, since this is an action at law and the court, upon motions for directed verdict, has found in favor of the defendants, this court should not, on appeal, direct judgment for the opposite party, unless there is no reasonable probability that upon another trial the defects in the defendant's proof could be supplied. It is pointed out that the disposition in the original opinion is in effect the entry of a judgment notwithstanding the verdict. Upon this record it seems that the defendants have had an adequate opportunity to present all the facts having a bearing upon their claim to the property under the execution, and it further appears that the only defect which there is any reasonable probability of their supplying upon another trial is proof that, at the time the mortgage was executed, the corporation had defaulted in its obligation to pay the annual license or filing fee to the state and that it had incurred the penalty of having its charter canceled upon the records of the Secretary of State. We are of the opinion that this proof would not aid the defendants. The general rule is that the legality of the

existence of a corporation or its ·right to exercise corporate powers can not be questioned collaterally (14 C. J. 223), and this rule finds proper application in suits where one party grounds his claim or defense upon the proposition that the corporate franchise has been forfeited for breach of condition subsequent, consisting in the failure to pay an annual license tax. See 14 C. J. 225; Greenbrier Lumber Co. v. Ward, 30 W. Va. 43, 3 S. E. 227.

An examination of the statutes of this state and of the authorities with reference to the requirement of an annual license or filing fee and the effect of the non-payment of the same convinces us that under these statutes the general rule is applicable, and where the state has not forfeited the charter for non-user or breach of condition through action brought in the courts, the corporate existence of a defaulting corporation can not be collaterally questioned.

Section 4518 of the Compiled Laws of 1913 provides for an annual report by corporations to the secretary of state between July. 1st and August 1st, which will show the names of the officers with residence and post office address; the expiration of the terms of. office, whether the corporation is pursuing an active business under its charter and the kind of business, which report is required to be accompanied by a filing fee of $2.50. The statute then, provides:

"The secretary of state shall in no case receive or file said report until said fee is paid and a failure to make said report and pay said fee shall *be prima facie evidence that said corporation is out of business*. And it is made the duty of the secretary of the state to notify such corporation by registered letter of its default, and unless such corporation shall within sixty days thereafter file such report and pay such fee, he shall enter upon the records of his office the cancellation of such charter or certificate to do business of the corporation failing to make report at the time and in the manner herein provided." (Italics are ours.)

Section 4521 reads:

"Any corporation which is pursuing an active business under its charter or certificate of authority to do business in the state of North Dakota failing to make said report at the time provided by law, may at any time within six months from such default be reinstated upon the record of the office of the secretary. of state upon the payment of

a fee in the sum of five dollars for such reinstatement and filing in said office an affidavit stating all the facts required in § 4518, and in addition thereto the fact that it was at the time of such default and still is in active business in the state of North Dakota."

Section 4522 requires the secretary of state to keep a record in his office showing all forfeiture and to publish a list annually.

At various times the legislature has made provision for reinstatement of corporations in default under § 4518. Laws 1907, chapter 54; Laws 1911, chapter 103; Comp. Laws 1913, § 4519; Laws 1915, chap. 98; Laws 1917, chap. 99; Laws of the Special Session of 1918, chap. 4. These acts generally provide for reinstatement upon the filing of the reports and the payment of the filing fees in default, together with a fee for reinstatement. Some provide for the payment of a penalty, and some require, in addition, an affidavit showing that the corporation is in active business.

Section 4518 of the Compiled Laws of 1913, as well as § 4521, were first enacted in this state as §§ 2 and 3 of chapter 65 of the Session Laws of 1905. In all substantial particulars these sections are identical with the similar sections of a law enacted in Illinois in 1901. See Session Laws of Illinois 1901, page 124. In February, 1914, a year prior to enactment here, the Supreme Court of Illinois had occasion to construe the act with reference to the effect of the failure of a corporation to file the required report and pay the fee. People ex rel. Hillel Lodge v. Rose, 207 Ill. 352, 69 N. E. 762. Section 2 of the Illinois act contained the exact language quoted from § 4518 of the Compiled Laws of North Dakota for 1913, except that in stating the effect of the failure to make the report and pay the fee the Illinois legislature had said that it should "be prima facie evidence that said corporation is out of business, *and shall work a forfeiture of the charter of such corporation.*" The italicized clause is omitted from the North Dakota enactment.

In construing the Illinois statute, the court said, in People ex rel. Hillel Lodge v. Rose, supra, at page 358 [207 Ill.]:

"The constitutionality of the act is attacked upon the ground that the legislature has no power to dissolve a corporation or to declare a forfeiture of its franchise, nor has the legislature the power to prescribe a state of facts under which this may be done through an ad-

ministrative officer, because such an act is the exercise of judicial power, which, under the constitutions of the State and of the United States, is vested in the judicial and denied, by implication, to the legislative department, and as petitioner was organized prior to the passage of the act of 1901, we are cited to the *Dartmouth College Case* [4 Wheat. 518, 4 L. ed. 629] and to other cases of like character, holding that a franchise of a corporation is property in the law, and is protected 'by the constitutions of the State and of the United States as a contract, which cannot be impaired by the legislature. The accuracy of petitioner's propositions, as abstract statements of the law, is beyond question, but we think them inapplicable here because based upon a misconstruction of the statute now before us. One of the purposes of the present statute evidently was to facilitate the taxation of corporations and to provide information for the taxing officers in reference to the existence and location of corporations organized under the laws of the State and owning property in the State. The purpose of this statute further is to require evidence once each year that the corporation is exercising the powers granted, and its failure to make such proof is made *prima facie* evidence of non-user. The thing that works a forfeiture of the corporation is the fact of non-user, which can be finally determined only by a court of competent jurisdiction (Bruffett v. Great Western R. Co. 25 Ill. 353; Baker v. Backus, 32 Ill. 79; Board of Education v. Bakewell, 122 Ill. 339, 10 N. E. 378); and the cancellation which the Secretary of State is required to enter upon the records of his office would, in such proceeding, make a *prima facie* case for the People. If the corporation is, in fact, engaged in active business and fails to make the report, it is not, by reason of that failure, deprived of its charter, but may, in a suit brought against it, show the fact and thereby defeat the proceeding. It is no doubt true, as suggested by petitioner, that if with the records in the office of the Secretary of State in their present condition, petitioner desired a certified copy of the documents filed by its incorporators as a basis for its charter, such copy would show the cancellation contemplated by section 2 of the statute. This condition of affairs, and the fact that such entry on the record is a perpetual and continuing notice that its corporate powers are ended, misleading though such notice may be in some instances, are incentives of the most potent character

for a compliance with § 2 of the act. The effect of the act is simply to make a failure to report, as required, *prima facie evidence,* and the clause providing that the failure to report and pay the fee therefor 'shall be *prima facie* evidence that said corporation is out of business, and shall work a forfeiture of the charter of such corporation,' was merely intended to be a statement of the effect of a condition, namely, non-user, of which condition the failure is made *prima facie* evidence." (See also Gilmer Creamery Asso. v. Quentin, 142 Ill. App. 448; State ex rel. Long v. Brownstone & River Valley Gravel Road Co. 120 Ind. 337, 22 N. E. 316).

One of the justices dissented, not on the ground of disagreement with this construction, but on the ground that the forfeiture of a corporate charter for non-user could not be effected by a ministerial officer such as the secretary of state, without a judicial determination that the corporation had been guilty of some act authorizing a forfeiture. See State ex rel. Standard Oil Co. v. Blaisdell, 22 N. D. 86, 132 N. W. 769, Ann. Cas. 1913E, 1089. Similar views are expressed in the West Virginia Case, supra. Hence, the act in question comes before us with a construction by the highest court of the state rendered approximately a year before its adoption here. Under this construction, the failure to pay the annual license fee does not, ipso facto, work a forfeiture of the corporate charter. At most, it affords *prima facie* evidence of the non-user of the charter and might amount to a violation of provisions of law by which it has incurred a forfeiture of its corporate rights, privileges and franchises; but such a result would not follow until there had been a legal determination of the fact of violation. The grounds for forfeiture of corporate franchises by action brought on behalf of the state or by private persons in the name of the state on leave granted are stated in § 8004, Compiled Laws of 1913, and include the ground here asserted, if the statute, § 4518, be construed as prescribing a condition of forfeiture.

We are clearly of the opinion that proof of the failure to file an annual report and pay the filing fees, would not establish the non-existence of the corporation in the instant case, its charter never having been forfeited in a direct proceeding for that purpose; and that the attempt of the defendants in that direction would be an inadmissible collateral attack. It follows that such evidence would not estab-

lish the invalidity of the plaintiff's mortgage.    The petition for re-hearing is denied.

CHRISTIANSON, Ch. J., and BURKE, JOHNSON, and NUESSLE, JJ., concur.